MOUNTAIN FUEL SUPPLY COMPANY,
Appellant (Petitioner),

v.

PUBLIC SERVICE COMMISSION OF
WYOMING, Appellee (Respondent).

No. 5723.

Supreme Court of Wyoming.

April 18, 1983.

John A. Sundahl of Godfrey & Sundahl, Cheyenne, and Gary L. Sackett, Associate Gen. Counsel, Salt Lake City, Utah, for appellant.

Steven F. Freudenthal, Atty. Gen., Steven R. Shanahan and Walter Perry III, Senior Asst. Attys. Gen., Cheyenne, for appellee.

Before ROONEY, C.J.,* and RAPER, THOMAS, ROSE ** and BROWN, JJ.

THOMAS, Justice.

This appeal is taken from a rate-increase order entered by the Public Service Commission of Wyoming (PSC) which was affirmed by the district court. Mountain Fuel Supply Company (Mountain Fuel) complains that the PSC should not have included revenue from an off-system sale of gas in determining revenue for the selected test year; that the PSC should not have adopted an adjusted historic year as a test year, but instead should have adopted a hypothetical projected year as a test year; and that the PSC unlawfully delegated to its staff the determination of a just and reasonable rate. We conclude that there is no error with respect to the inclusion of the off-system sale and the selection of the test year, and we shall affirm the PSC as to those contentions. We cannot discern from the findings of fact by the PSC the rationale for its finding as to a just and reasonable rate. The expert who testified on behalf of the PSC stated in his testimony the rates which are included in the finding by the PSC, but we must reverse and remand that aspect of the case to the PSC for an articulation of its reason for adopting the finding that it entered of a just and reasonable rate. That explanation is essential to any meaningful review of the lawfulness of the rate determination by the PSC.

This case was instituted on April 22, 1981, by the filing by Mountain Fuel of simultaneous applications with the PSC seeking permanent relief in the form of a general increase in its rates in the amount of $2,633,000 (Docket No. 9192 Sub 68) and interim rate relief in the amount of $2,278,000 (Docket No. 9192 Sub 69) pending PSC action with respect to the application for a permanent rate increase. On May 7, 1981, the PSC summarily denied the request for

* Became Chief Justice on January 1, 1983.

** Chief Justice at time of oral argument.

interim rate relief. On May 22, 1981, the PSC, in accordance with § 37–3–106(c), W.S.1977, suspended the proposed permanent rates for six months pending its investigation and hearing on the lawfulness of the application by Mountain Fuel. Mountain Fuel then requested a rehearing or reconsideration of the order denying interim relief, and in response the PSC scheduled simultaneous hearings on both applications beginning July 8, 1981.

Additional parties were added by motions to intervene and participate in hearings. These included the Staff of the PSC, Stauffer Chemical Company of Wyoming, FMC Corporation and the Western Wyoming Utility Consumer Action Group. The Staff of the PSC appeared and participated as an independent party separate and apart from the PSC. A stipulation was entered into by the parties and approved by the PSC pursuant to which the requests of Mountain Fuel were adjusted downward to $2,201,000 in permanent rate relief and $1,891,000 in interim rate relief.

At the conclusion of the hearings a schedule for the submission of briefs and proposed findings of fact and conclusions of law was established. The PSC then entered its final order on October 28, 1981, granting permanent rate-increase relief in the amount of $893,000 to Mountain Fuel and denying Mountain Fuel's request for interim relief. The permanent rate increase authorized by the PSC went into effect on January 1, 1982.

In accordance with § 37–2–219, W.S. 1977,[1] Mountain Fuel appealed the order of the PSC to the district court by filing a petition for review on November 25, 1981.[2]

1. Section 37–2–219, W.S.1977, provides:
 "Any party in interest or any person or party authorized under section 37–17, Wyoming Statutes 1957 [§ 37–2–118], to file an original complaint before the commission, may appeal from a final decision or other commission action or inaction, in the same manner, and to the same extent, as provided by the Wyoming Administrative Procedure Act [§§ 9–4–101 to 9–4–115]."

2. The provisions of § 37–2–130, W.S.1977 (Cum.Supp.1982), also apply to the appeal. This statute provides:

No appeal was taken by Mountain Fuel from the denial by the PSC of interim relief. On April 28, 1982, the district court issued an opinion letter affirming the order of the PSC. The court's final order affirming the PSC then was entered on May 26, 1982. This appeal is taken from that final order. Additional pertinent facts will be adduced whenever appropriate in the discussion leading to our holdings.

In its brief Mountain Fuel states the issues for review as follows:

"1. Is the Commission's order arbitrary and capricious and violative of Appellant's due process rights because it is not supported by adequate findings of fact? In particular, are there adequate findings to support the Commission's determination that 14.1% represents a lawful return on shareholders' equity investment?

"2. Does the Commission's order comport with the 'just and reasonable' standard for setting utility rates as required by Wyoming Statutes § 37–3–101?

"3. Does the Commission's order violate the proscription of confiscation of property set forth in the Wyoming and United States Constitutions?

"4. Has the Commission abused its discretion and unlawfully delegated certain of its ratemaking responsibilities by summarily adopting its staff's recommendations concerning an appropriate rate of return on shareholders' equity capital without the support of substantial evidence?

"5. Has the Commission unlawfully based its determination of utility rates on assumptions and circumstances that do

"A person, adversely affected or aggrieved by any action, findings, conclusions or decision of the public service commission is entitled to judicial review thereof according to the procedures established by the Wyoming Administrative Procedure Act [§§ 9–4–101 through 9–4–115] and the Wyoming Rules of Appellate Procedure. The standards to be applied, to judicial review proceedings, including scope of review, shall be those standards established in the Wyoming Administrative Procedure Act."

not adequately reflect the conditions under which the utility will be operating during the period when rates are to be effective?

"6. Has the Commission engaged in unlawful 'retroactive ratemaking' by considering early-1980 revenues from the sale to El Paso Natural Gas Company in determining just and reasonable rates for a period following October 28, 1981?"

The PSC made its own statement of the issues in the following language:

"I. ARE THE COMMISSION'S FINDINGS CONCERNING THE USE OF AN HISTORICAL TEST YEAR, RATE OF RETURN, AND OFF–SYSTEM GAS SALES REVENUES SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD?

"II. DID THE COMMISSION MAKE FINDINGS CONCERNING THE USE OF AN HISTORICAL TEST YEAR AND RATE OF RETURN WHICH INDICATE WHAT UNDERLYING EVIDENTIARY FACTS THE COMMISSION RELIED UPON FOR A FINDING OR CONCLUSION OF ULTIMATE FACTS?

"III. SHOULD THE COURT REQUIRE THE COMMISSION TO USE A PROJECTED OR FUTURE TEST YEAR IN ESTABLISHING RATES?

"IV. SHOULD THE COURT REQUIRE THE COMMISSION TO ALWAYS ESTABLISH THE RATE OF RETURN ON EQUITY ABOVE THE UTILITY COMPANY'S CURRENT LONG–TERM DEBT COST?"

While Mountain Fuel and the PSC have articulated the issues in several different contexts, we conclude that the major points which are in contention in this case revolve around three focal points:

(1) The failure of the PSC to exclude from its test-year revenues certain revenues derived from an off-system sale of gas to the El Paso Natural Gas Company.

(2) The refusal of the PSC to adopt a projected future test year for rate-making purposes, and its adherence to an adjusted historical year.

(3) The finding by the PSC that a 14.1 percent rate of return on the common stock equity was fair and reasonable.

The first four issues as stated by Mountain Fuel and the fourth issue stated by the PSC relate to the third point described. The fifth issue stated by Mountain Fuel and in part the first two issues and the third issue stated by the PSC relate to the second point. The sixth issue as stated by Mountain Fuel and in part the first and second issues stated by the PSC relate to the third area. We shall proceed to dispose of the contentions of the parties in accordance with the order of the areas of dispute which we have identified. It is perhaps helpful to reiterate an overview of our appellate rules dealing with appeals from administrative action.

Specifically applicable to the PSC, § 37–2–130, W.S.1977 (Cum.Supp.1982), explicitly provides that the Wyoming Administrative Procedure Act, §§ 9–4–101 to 9–4–115, W.S.1977 (now found at §§ 16–3–101 to 16–3–115, W.S.1977, Oct. 1982 Rev.), governs appeals from the Public Service Commission. The scope of our review of an order of an administrative agency is stated in § 9–4–114(c), W.S.1977 (Cum.Supp.1982) (now found at § 16–3–114(c), W.S.1977, Oct. 1982 Rev.), which provides:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations, or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

■ In conducting our review of administrative action, we are not bound to accept any of the conclusions reached in the district court, but we are obligated to review the appeal as if it came directly to this court from the agency. *Wyoming State Department of Education v. Barber,* Wyo., 649 P.2d 681 (1982); *Spivey v. Lucky Mc Uranium Corporation,* Wyo., 636 P.2d 518 (1981); and *Board of Trustees of School District No. 4, Big Horn County v. Colwell,* Wyo., 611 P.2d 427 (1980). We are charged by statute with an examination of the whole record to determine if there is substantial evidence to support the findings of the agency. Section 9–4–114(c), W.S.1977 (Cum.Supp.1982) (now found at § 16–3–114(c), W.S.1977, Oct. 1982 Rev.). If the agency's decision is found to be supported by substantial evidence, we cannot substitute our judgment for that of the agency, but are required to uphold its findings upon appeal. *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming,* Wyo., 627 P.2d 173 (1981); *Williams v. Public Service Commission of Wyoming,* Wyo., 626 P.2d 564 (1981), cert. denied 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Great Western Sugar Company v. Johnson,* Wyo., 624 P.2d 1184 (1981); and *Telstar Communications, Inc. v. Rule Radiophone Service, Inc.,* Wyo., 621 P.2d 241 (1980).

Although we are not required to accept the conclusions of the district court in connection with reviews of actions of administrative agencies, we have said that we find the articulation of the views of the district court to be helpful to us in conducting our review. *Wyoming Public Service Commission v. Hopkins,* Wyo., 602 P.2d 374 (1979);

*Board of Trustees, Laramie County School District No. 1 v. Spiegel,* Wyo., 549 P.2d 1161 (1976). We must temper the application of that principle somewhat in this case because it appears from the letter opinion entered by the district court that it had in mind an erroneous standard for evaluating the evidence. The district court, after reciting proper statements of the law in this area, said:

"6. The appellant [sic] court must assume the evidence in form [sic] of the successful party as true, leave out of consideration entirely evidence of the unsuccessful party that conflicts with it and give to the evidence of the successful party every inference which may [sic] reasonably and fairly drawn from it. * * * "

Again the district court said:

" * * * This Court must, assume the evidence in favor of the PSC is true, leave out of consideration the evidence of Mountain Fuel that conflicts with it and give to the evidence of PSC every inference which may necessarily be drawn from it. * * * "

The test that we have espoused is not compatible with a rejection of the evidence of the unsuccessful party, which test was relied upon in part by the district court.

■ The statements of the district court concerning the view to be taken of the evidence do not pertain in administrative appeals. For these cases we have adopted a definition of substantial evidence "as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* supra, 549 P.2d at 1178, quoting *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). Such evidence may be less than the weight of the evidence, but cannot be clearly contrary to the overwhelming weight of the evidence. It is more than a mere scintilla of evidence or suspicion of a fact to be established. However, when our review of the whole record as required by § 9–4–114(c), W.S. 1977 (Cum.Supp.1982) (now found at § 16–

3–114(c), W.S.1977, Oct. 1982 Rev.), leads the court to conclude that sufficient relevant evidence is present which a reasonable mind might accept as adequate to support the agency, then our examination is completed. *Laramie River Conservation Council v. Industrial Siting Council,* Wyo., 588 P.2d 1241 (1978); *Rayburne v. Queen,* 78 Wyo. 359, 326 P.2d 1108 (1958); and *Howard v. Lindmier,* 67 Wyo. 78, 214 P.2d 737 (1950). The burden of proving a lack of substantial evidence is upon the party appealing the agency's determination. *Laramie River Conservation Council v. Industrial Siting Council,* supra, 588 P.2d at 1253; *Chicago & North Western Railway Company v. Public Service Commission of Wyoming,* 79 Wyo. 343, 334 P.2d 519 (1959). If there is present substantial evidence to support a finding of the agency, the ultimate weight to be given that evidence before the PSC, as the trier of fact, is to be determined by the PSC in light of its expertise and the experience of its members in such matters. *Williams v. Public Service Commission of Wyoming,* supra, 626 P.2d at 573; *Telstar Communications, Inc. v. Rule Radiophone Service, Inc.,* supra, 621 P.2d at 245; *Big Horn Rural Electric Company v. Pacific Power and Light Company,* Wyo., 397 P.2d 455 (1964).

The PSC, in exercising its statutory powers to regulate and supervise public utilities in the State of Wyoming, as provided in § 37–2–112, W.S.1977, is required to give paramount consideration to the public interest, the desires of the utility being secondary. *Telstar Communications, Inc. v. Rule Radiophone Service, Inc.,* supra, 621 P.2d at 246; *Big Horn Rural Electric Company v. Pacific Power and Light Company,* supra, 397 P.2d at 457. This court cannot usurp the legislative function delegated to the PSC in setting appropriate rates, but will defer to the agency discretion so long as the results are fair, reasonable, uniform and not unduly discriminatory. *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming,* supra, 627 P.2d at 179–180; *Great Western Sugar Company v. Johnson,* supra, 624 P.2d at 1187–1188.

In this appeal Mountain Fuel does not argue that the procedures followed by the PSC were deficient or that the PSC acted in excess of its authority. Instead the arguments presented by Mountain Fuel focus upon the presence of substantial evidence in the record to support certain critical findings and conclusions of the PSC; whether the PSC was arbitrary and capricious in failing to make adequate findings of fact; whether the order of the PSC comported with the "just and reasonable" standard for setting utility rates contained in § 37–3–101, W.S.1977 (Cum.Supp.1982)[3], or amounted to an unconstitutional confiscation of private property; whether the PSC acted unlawfully by delegating its rate-making responsibility, the argument being that the PSC summarily adopted the rate of return recommendations made by its staff; and whether the PSC engaged in impermissible retroactive rate making.

The focus of this last contention is the inclusion of revenues derived from an off-system sale of gas in establishing the appropriate test-year revenues for purposes of rate making.[4] Mountain Fuel's case position is that the inclusion of these revenues was, in effect, impermissible retroactive rate making, and such action is per se unreasonable as amounting to an unlawful confiscation of private property. It contends that the sale of natural gas to El Paso Natural Gas Company, the off-system sale

---

3. Section 37–3–101, W.S.1977 (Cum.Supp. 1982), provides:

"All rates shall be just and reasonable, and all unjust and unreasonable rates are prohibited. Except as otherwise provided in W.S. 15–7–407, no public utility shall in any manner charge, demand, collect or receive from any person greater or less or different compensation for any service rendered or to be rendered by the public utility than is charged, demanded, collected or received by the public utility from any other person for a like and contemporaneous service under similar circumstances and conditions."

4. While this sale began in late 1979, only those revenues derived from deliveries made in 1980 were included by the PSC in determining the revenue for the test year.

of gas relied upon, beginning in late 1979 and continuing into April 1980 was a "one-time" emergency sale, and that there was no substantial evidence that such sales would occur during the period for which it sought to have increased rates set. Mountain Fuel points to the exclusion of similar revenues in a previous general rate case which it initiated as demonstrating that in this case there occurred an inconsistent and arbitrary application of the PSC's own rule for adjusting test-year data only to encompass known and measurable changes likely to continue in the future. Mountain Fuel further argues that there is no substantial evidence in the record to support the inclusion of such revenues, and that the conclusion of the PSC to the contrary is based purely upon conjecture and speculation.

Contrary to the argument of Mountain Fuel, we hold that there is substantial evidence in the record supporting the finding of the PSC that revenues from the off-system sale of gas appropriately should be included in setting future rates. There was evidence before the PSC which indicated that Mountain Fuel's characterization of the sale as a "one-time" emergency transaction was not correct. Mountain Fuel had made at least two other similar sales in the recent past. Furthermore, Mountain Fuel was engaged in modifying its transmission plant facilities beyond modifications that would be required to service its retail customers, and the purpose of those enhanced modifications was to facilitate future off-system sales and transmission arrangements with other companies. The evidence demonstrates that these increased capital expenditures were included in the rate base upon which Mountain Fuel would be entitled to earn future rates of return.

Further justification for including this sale is found in the impact which the transaction had upon Mountain Fuel's retail customers. The evidence reflects that Mountain Fuel's retail customers will be required to pay in excess of $8,000,000 in additional gas costs in the future as a result of the method of cost allocation adopted by Mountain Fuel for the El Paso sale. Mountain Fuel was permitted to charge El Paso an average of $2.19 per mcf delivered as "new" gas. In allocating its cost of the gas sold in this transaction Mountain Fuel specified, however, that certain low-cost gas reserves were the source of the gas sold to El Paso which resulted in an average cost of 63 cents per mcf for the gas sold to El Paso. Mountain Fuel in the future must replace these reserves which were shown as sold at a much higher cost for new gas supplies. Since Mountain Fuel's retail customers are billed on a method which encompasses a system-wide average cost of gas sold, the future purchases of higher-cost new supplies will result in higher prices to individual consumers during the period for which the rates were sought.

The most telling evidence supporting the inclusion of the El Paso sale revenues is found in Mountain Fuel's own forecast of future revenues in which it indicates that it expects future off-system sales not only to continue, but to increase in dollar amount during the next year. Given this information, we cannot say that there was not substantial evidence in the record supporting the decision of the PSC, in the exercise of its expertise and in the light of the experience of its members, to include the revenues derived from the El Paso gas sale in setting the appropriate test-year revenues. We find no error in this regard.

The arguments concerning the selection of an appropriate test year to be used in setting future rates are peripherally related to the issue of the off-system gas sale. Mountain Fuel in its arguments concerning the sale of the gas to El Paso Natural Gas Company noted that if a test year beginning in April 1980 had been selected instead of one beginning in January 1980, the PSC would have excluded the effects of the off-system sale entirely from consideration. In its presentation of its rate case, Mountain Fuel argued that future rates should be based upon projected future test-year figures instead of figures derived from an historical test year which then were adjusted for known and measurable changes traditionally relied upon by the PSC. The PSC rejected the use of a projected or future

test year, recognizing that while contemporary rate making requires it to be cognizant of prospective conditions and circumstances faced by utilities seeking rate relief, still in the experience of the PSC it had found that appropriate adjustments for historical test-year data would adequately account for anticipated changes. The PSC noted that the use of a projected test year is fraught with uncertainty and speculation, and it further found that the subjectivity demonstrated in projected future data created a bias in favor of the utility which could result in an excessive return. This factor would make such projections unsuitable in light of the PSC's paramount consideration for the public interest in setting rates.

The PSC is required by statute to arrive at rates which are "just and reasonable." Section 37-3-101, W.S.1977 (Cum.Supp. 1982). Mountain Fuel concedes in its reply brief that the real question concerning the methodology for choosing a particular test year is whether the rates derived from the use of the selected methodology comply with this standard. The burden is upon Mountain Fuel to prove that the rates arrived at are unjust or unreasonable. Section 37-3-106(a), W.S.1977; *Natural Gas Consumers of Rock Springs v. Northern Utilities Co. of Casper*, 70 Wyo. 225, 247 P.2d 767 (1952). Mountain Fuel, while denying any such intention, is seeking a determination by this court that the use of a methodology based upon an historical test year instead of a projected future test year will result, as a matter of law, in rates which are unjust and unreasonable. We find no sufficient justification for adopting such a proposition of law.

This argument was addressed by the Supreme Court of the United States in a case considered to be one of the landmark rulings in the area of rate making. In *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 287–288, 88 L.Ed. 333 (1944), the Court held:

" * * * Under the statutory standard of 'just and reasonable' it is the result reached not the method employed which is controlling. [Citations.] It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. * * * "

Our court recently has stated:

" * * * We will not set a formula to be applied by the PSC in establishing a rate structure or in setting rates." *Great Western Sugar Company v. Johnson*, supra, 624 P.2d at 1188.

■ Courts of other jurisdictions which have dealt with the question of whether the use of a projected test year is required in rate setting have reached similar conclusions. *Utah Power & Light Company v. Idaho Public Utilities Commission*, 102 Idaho 282, 629 P.2d 678, 683 (1981) (Bistline, J., dissenting on other grounds); *L.S. Ayres & Company v. Indianapolis Power & Light Company*, 169 Ind.App. 652, 351 N.E.2d 814 (1976); *New England Telephone and Telegraph Company v. Public Utilities Commission*, Me., 390 A.2d 8, 47–50 (1978); and *Ohio Utilities Company v. Public Utilities Commission*, 58 Ohio St.2d 153, 12 Ohio Op.3d 167, 389 N.E.2d 483, 489· (1979). We agree that if the end result reached by the PSC complies with the "just and reasonable" standard announced in the statute, the methodology used by the PSC is not a concern of this court, but is a matter encompassed within the prerogatives of the PSC.

■ Furthermore, we note substantial evidence in the record which would justify the finding by the PSC that the use of projected test-year figures as derived by Mountain Fuel should be rejected as too subjective. Clifford Nowell, the economist

testifying on behalf of the PSC Staff, stated those factors which from his examination indicated that the methods used by Mountain Fuel to project the test year were too subjective. For each individual account to be projected, Mountain Fuel selected one of eight different forecasting methodologies to derive a statistical estimate of the balance of the account in the future test year based upon data selected from various time periods chosen by Mountain Fuel.[5] Mountain Fuel's Director of State Regulation and its expert witness for this purpose admitted the subjectivity inherent in any type of forecasting of this nature but he asserted that the overall result reached made this method appropriate. This witness further admitted that the forecast results could be manipulated to reflect a utility bias by the selection of a particular forecasting method or time period from which data was utilized in making the computation. Other witnesses for the PSC Staff criticized the use of this particular system of deriving projected future test-year figures because it had the effect of removing many incentives to contain costs and would perpetuate past inefficiencies. Since we find a rational basis for the rejection by the PSC of the projected test year advocated by Mountain Fuel in favor of the historical test year commencing January 1980, we will not interfere with the discretion of the PSC in selecting the particular test year.

 Finally we turn to the problem which received the major emphasis in connection with the position of the parties. That is the portion of the order of the PSC establishing the rate of return, and the question of the sufficiency of the findings of the PSC. We conclude that this order does not manifest adequate findings in accordance with our prior cases, and that for this reason only the case must be remanded to the PSC for the purpose of making adequate findings or further consideration if

that be necessary. We focus upon that portion of the order in which a rate of return on common equity of 14.1 percent advocated by the Staff was adopted by the PSC instead of the figure of 16.5 percent which was testified to by the expert for Mountain Fuel. The pertinent findings are:

## "RATE OF RETURN

"33. The Commission, in determining the rate base elements including rate of return must rely on factually-based evidence as far as possible under the 'used and useful' and 'known and measurable' ratemaking concepts. The Commission has accepted discounted cash flow, comparable earnings, and other evaluations as a basis in establishing a reasonable rate of return.

"34. Mountain Fuel's rate of return expert, Mr. Glenn, presented a return on common equity of 16.50%, based on a discounted cash flow analysis, comparable earnings, debt-plus-premium approach, capital asset pricing model, and an Earnings/Price Ratio approach. The Witness determined an overall rate of return on rate base of 12.44% based on a test year ending December 31, 1980 in its interim application.

"35. The Staff's witness, Mr. Nowell, supported a 14.10% rate of return on common equity based on a discounted cash flow analysis and a comparable earnings study using 26 comparable companies. The Staff applied Mountain Fuel's test year-end capitalization and historical debt costs to determine an overall rate of return on rate base of 11.34%.

"36. The Commission finds that a 14.10% rate of return on common equity and a 11.34% rate of return on rate base is fair and reasonable and supported by the evidence. The capital structure of Mountain Fuel as of December 31, 1980 is as follows:

5. The time period from which data was utilized to make the projection varied for each account from the use of figures from the 60 preceding

months to any 12-month period in those 60 which seemed most representative of the long-term trend to the individual forecaster.

| "CAPITAL RATIO | EMBEDDED COST AND RETURN | WEIGHTED COMPOSITE COST |
|---|---|---|
| "Long-Term Debt | 42.04% | 8.65% | 3.64% |

| | "CAPITAL RATIO | EMBEDDED COST AND RETURN | WEIGHTED COMPOSITE COST |
|---|---|---|---|
| "Long-Term Debt | 42.04% | 8.65% | 3.64% |
| Preferred Stock | 11.95% | 10.14% | 1.21% |
| Common Equity | 46.01% | 14.10% | 6.49% |
| | 100.00% | | 11.34%" |

This court previously has articulated the requirement that administrative agencies must make sufficiently detailed findings to support their finding of ultimate facts or conclusions. In *Geraud v. Schrader*, Wyo., 531 P.2d 872, 879 (1975), cert. denied sub nom. *Wind River Indian Education Association, Inc. v. Ward*, 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975), the following language is found:

" * * * It is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. The court must know why. * * * "

Rulings to the same effect are found in *Larsen v. Oil and Gas Conservation Commission*, Wyo., 569 P.2d 87 (1977); *State Board of Equalization v. Kansas-Nebraska Natural Gas Company*, Wyo., 457 P.2d 963 (1969); *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 446 P.2d 550 (1968); *Glenn v. Board of County Commissioners, Sheridan County*, Wyo., 440 P.2d 1 (1968); *Svilar Light and Power, Inc. v. Riverton Valley Electric Association, Inc.*, Wyo., 355 P.2d 52 (1960); and *Gore v. John*, 61 Wyo. 246, 157 P.2d 552 (1945).

One of the arguments presented by Mountain Fuel is that the PSC, in effect, adopted a "North Central" doctrine in connection with this rate setting because, so Mountain Fuel asserts, the PSC has in recent rate cases adopted the recommendation of the Staff as to the rate of return with only minor variations. The "North Central" doctrine is a methodology of reviewing of expert testimony on rate of return on common equity adopted by the Public Service Commission of Minnesota in In Petition of North Central Public Service Company, No. G–101/GP–77–221 (Minn. Pub.Serv.Comm. Dec. 30, 1977) which requires that the lowest recommendation within the range of reasonableness be accepted. This doctrine of the Minnesota Public Service Commission was repudiated in *Hibbing Taconite Company v. Minnesota Public Service Commission*, Minn., 302 N.W.2d 5 (1980), on the ground that it constituted an arbitrary delegation to the Staff of the Commission's duty to establish a just and reasonable rate. It is not shown that the Wyoming Public Service Commission has adopted or utilized a similar policy, and the Hibbing Taconite Company holding is not specifically applicable in the instant case. Mountain Fuel argues, however, that the effect of uniformly adopting the Staff's recommendation is that the same result occurs.

Our difficulty with the present case is found in the fact that the findings of the Commission do not set forth its reasons for adopting the Staff position and rejecting the testimony of the Mountain Fuel expert. We can discern the result, but, without more, the finding of the PSC is subject to the interpretation adopted and urged by Mountain Fuel. More detail is required in order to permit this court to accomplish its assigned task of a meaningful judicial review. In order for us to be satisfied that the criticism of Mountain Fuel is not well taken it is necessary that the order of the PSC reflect the ways in which the testimony of the Mountain Fuel expert did not

satisfy accepted criteria of the Commission, which it relies upon in arriving at a fair and reasonable rate, and in the same regard the basis for its conclusion that the testimony offered by its Staff accords with acceptable criteria should be stated. In other words, the order should reflect the reasons why one expert's view was chosen over the other expert's view. Failure to do so does subject the order of the PSC to attack as being arbitrary, capricious, and contrary to law. We hold that in order to permit this court to accomplish the judicial review which is required by law the case must be remanded to the PSC so that the requisite supplemental findings can be made.

The order of the district court is affirmed in part and reversed in part with instructions that the case be remanded to the PSC for the entry of additional findings relating to a fair and reasonable rate of return in accordance with this opinion.