The MOUNTAIN STATES TELEPHONE
AND TELEGRAPH COMPANY,
Petitioner,

v.

The PUBLIC SERVICE COMMISSION
OF WYOMING, Respondent.

No. 84–90.

Supreme Court of Wyoming.

April 23, 1985.

Rehearing Denied May 28, 1985.

W. Douglas Hickey, Cheyenne, for petitioner.

A.G. McClintock, Atty. Gen., Steven R. Shanahan, Senior Asst. Atty. Gen., Michael L. Hubbard, Asst. Atty. Gen., and Bruce Asay, Sp. Asst. Atty. Gen., Cheyenne, for respondent.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

On February 4, 1983, The Mountain States Telephone and Telegraph Company (Mountain Bell) filed with the Wyoming Public Service Commission (PSC) an Application for Authority to Change Tariffs requesting an increase in its rates to generate additional revenues in the amount of $20,861,000 annually. This requested rate increase was later reduced to $16,016,000. The Independent Staff of the PSC intervened in the case, as did several other entities. On November 22, 1983, the PSC entered its order granting an increase in revenues in the amount of $1,494,328 per annum. An Application and Petition for Rehearing was denied by the PSC; the case was appealed to the district court, and certified to this court upon a stipulation and joint motion, pursuant to Rule 12.09, W.R.A.P.

Appellant articulates numerous issues on appeal. The issues all boil down to (1) whether the rate of return authorized by the PSC is proper, or whether it resulted in a confiscatory rate, thus denying Mountain Bell its constitutional guarantees of equal protection and due process, (2) whether the rate allowed was arbitrary, capricious and an abuse of discretion and not supported by substantial evidence, and (3) whether certain adjustments to rate base and expenses made by the PSC were supported by substantial evidence or whether they were arbitrary and capricious.

We affirm.

The PSC is charged with the responsibility of regulating public utilities. Section 37–2–112, W.S.1977. Our review of an administrative agency's action is governed by the Wyoming Administrative Procedure Act (§§ 16–3–101 through 16–3–115, W.S. 1977). *Board of County Commissioners of Teton County v. Teton County Youth Services, Inc.*, Wyo., 652 P.2d 400 (1982). Section 16–3–114(c), W.S.1977,[1] provides for a review of the whole record, or those parts of it cited by a party, and provides that the reviewing court shall hold as unlawful agency actions, findings and conclusions found to be, among other things, unconstitutional, arbitrary, capricious or unsupported by substantial evidence. We have often said that we will not substitute our judgment for that of the PSC if the PSC's decision is supported by substantial evidence. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming*, Wyo., 662 P.2d 878 (1983); *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming*, Wyo., 627 P.2d 173 (1981); *Appeal of Williams*, Wyo., 626 P.2d 564, cert. denied 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211

---

1. Section 16–3–114(c), W.S.1977, provides:
   "(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
   "(i) Compel agency action unlawfully withheld or unreasonably delayed; and
   "(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

   "(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
   "(B) Contrary to constitutional right, power, privilege or immunity;
   "(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
   "(D) Without observance of procedure required by law; or
   "(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

(1981); *Great Western Sugar Company v. Johnson,* Wyo., 624 P.2d 1184 (1981); *Matter of Rule Radiophone Service, Inc.,* Wyo., 621 P.2d 241 (1980); *Sage Club, Inc. v. Employment Security Commission of Wyoming,* Wyo., 601 P.2d 1306 (1979). We recognize that the direction to review the whole record of the administrative agency hearing requires more than an examination of evidence favorable to a prevailing party.

"Prior to 1979, the 'substantial evidence' standard was definitely mandated in the Wyoming Administrative Procedure Act:

" '(c) The court's review pursuant to the provisions of this section shall be limited to a determination that:

*       *       *       *       *       *

" '(iv) The findings of facts in issue in a contested case are supported by substantial evidence * * *.' Former § 9–4–114(c), W.S.1977.

"This subsection was amended, effective May 25, 1979, to require agency action, findings and conclusions to be supported by substantial evidence, but also to provide for a review of the 'whole record.' Under this standard, we do not examine the record only to determine if there is substantial evidence to support the Board's decision, but we must also examine the conflicting evidence to determine if the Board could reasonably have made its findings and order upon all of the evidence before it. After reviewing the history and rationale in changing the 'substantial evidence' rule in the Wagner Act to the 'whole record' provision of the Federal Administrative Procedure Act (similar to present provisions of § 9–4–114(c)), the consideration is stated in *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951), and quoted in *National Labor Relations Board v. Walton Manufacturing Company,* 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962):

" ' * * * the "reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that

decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view," it may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."
* * *' '' (Footnote omitted.) *Board of Trustees of School District No. 4, Big Horn County v. Colwell,* Wyo., 611 P.2d 427, 428–429 (1980).

The same is true with reference to a determination of constitutional action, illegal action, etc. Accordingly, we here review the whole record to determine if there is unconstitutional confiscatory action by the PSC and if there is substantial evidence to support the PSC holdings.

▆▆▆ In addition, the initial burden of proof rests on the utility to show that an expense of investment is properly included in rates. Section 37–3–106(a), W.S.1977. When the utility fails to meet its burden, that expense is properly excluded. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming,* supra; *Montana Power Company v. Department of Public Service Regulation,* Mont., 665 P.2d 1121 (1983); *Utah Department of Business Regulation, Division of Public Utilities v. Public Service Commission,* Utah, 614 P.2d 1242 (1980). It should also be noted that it is the end result of the various PSC findings which dictates whether confiscation has occurred, not the method employed in achieving such result. *Application of Northern Utilities Co.,* 70 Wyo. 225, 247 P.2d 767 (1952); *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); *Bluefield Waterworks & Improvement Co. v. Public Service Commission of West Virginia,* 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923).

### SETTING OF CONFISCATORY AND UNREASONABLE RATES

Mountain Bell contends that the rates allowed by the PSC are unreasonable and

result in an unconstitutional confiscation of the property of Mountain Bell.

Mountain Bell finds fault with the PSC's use of a historical test period, with an end-of-test-year rate base. This involves utilizing figures from the end of a twelve-month period of time, in this case ending September 30, 1982, with adjustments made for known and measurable changes. Mountain Bell contends that this results in "regulatory lag" which

" * * * results from the fact that the Commission is making decisions for the future based upon information that is, in many cases, several months old by the time a case is filed and even more stale by the time the rates go into effect."

Thus, Mountain Bell continues,

" * * * the Commission by focusing on the past, sets rates upon conditions that may bear little or no resemblance to those which will exist when the rates are in effect."

Mountain Bell then informs us that its earnings have been insufficient in the past to allow the company to achieve even the rate of return previously authorized by the PSC. Mountain Bell contends that this results in a confiscatory and unreasonable rate, thus denying them equal protection and due process.

We have upheld the use of a historical test year. In *Mountain Fuel Supply Company v. Public Service Commission of Wyoming,* supra, we specifically refused to accept the proposition that the use of a historical test year will result, as a matter of law, in rates which are unreasonable and unjust. We said at page 885:

"The PSC is required by statute to arrive at rates which are 'just and reasonable.' Section 37-3-101, W.S.1977 (Cum.Supp. 1982). Mountain Fuel concedes in its reply brief that the real question concerning the methodology for choosing a particular test year is whether the rates derived from the use of the selected methodology comply with this standard. The burden is upon Mountain Fuel to prove that the rates arrived at are unjust or unreasonable. [Citations.] Mountain

Fuel, while denying any such intention, is seeking a determination by this court that the use of a methodology based upon an historical test year instead of a projected future test year will result, as a matter of law, in rates which are unjust and unreasonable. We find no sufficient justification for adopting such a proposition of law."

■ In the present case we must again say that the utility has failed to meet its burden of showing that the rates are unjust or unreasonable. The primary concern of the PSC is to see that the public interest is met. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming,* supra; *Matter of Rule Radiophone Service, Inc.,* supra; *Big Horn Rural Electric Company v. Pacific Power & Light Company,* Wyo., 397 P.2d 455 (1964). Desires of a utility are secondary, *Big Horn Rural Electric Company v. Pacific Power & Light Company,* supra; *Matter of Rule Radiophone Service, Inc.,* supra. It is interesting to note that Mountain Bell complains that the use of the historical test year is unreasonable because it is not based on the time period in which the rate will be applied, i.e. the future, but then Mountain Bell objects to the adjustments made to the test year, even though these adjustments are made for known and measurable changes which have occurred after the end of the test year. As we have said before, Mountain Bell has failed to meet its burden of proving that the rate ultimately set is unreasonable. We will discuss, infra, the individual adjustments made.

### RATES NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND SET ARBITRARILY AND CAPRICIOUSLY

Mountain Bell also contends that the rate set by the PSC is unreasonable because it constitutes an arbitrary and capricious abuse of discretion. As explained by Mountain Bell, the appropriate revenues of a regulated firm are determined in accordance with the following formula: $R = C + Ir$ (Revenue equals cost of operation plus assets invested times a reasonable rate of

return on that investment). The investments are divided into debt and equity components. The debt component is that amount of investment which was generated by means of corporate contractual obligations, such as bonds or other debt instruments; the equity component is that investment provided by shareholders in the enterprise. The PSC fixes an appropriate rate of return for each of the two components, and then, using a weighted average, formulates an overall rate of return upon the company's overall investment or rate base. Based on a capital structure consisting of 45% debt and 55% equity, the PSC established the cost of debt at 8.83%, the cost of equity at 13.85%, and an overall rate of return of 11.59%. Mountain Bell contends that the 13.85% cost of equity is not supported by the evidence.

What Mountain Bell *should* say is that the PSC decision in this regard is not supported by *its* evidence. We find from reviewing the entire record that Mountain Bell and the Independent Staff presented vastly differing evidence relative to the cost of equity. There is no disagreement with the leading cases regarding rate of return. The capital attraction standard for the rate of return is set out in *Bluefield Waterworks & Improvement Co. v. Public Service Commission of West Virginia*, supra, 262 U.S. 679, 693, 43 S.Ct. 675, 679:

" * * * The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties. A rate of return may be reasonable at one time and become too high or too low by changes affecting opportunities for investment, the money market and business conditions generally."

The United States Supreme Court then established the corresponding risk standard in the case of *Federal Power Commission v. Hope Natural Gas Co.*, supra, 320 U.S. 591, 603, 64 S.Ct. 281, 288, where they said:

" * * * [T]he return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital. * * * "

These standards have been incorporated into the decisions of this court by virtue of *Application of Northern Utilities Co.*, supra. The PSC too recognized these decisions in the final order.

■ However, Mountain Bell's experts testified to a rate of return based on comparison with other enterprises which were not utility companies. The Independent Staff presented evidence based on comparison with other utilities. A perusal of the whole record shows that there is ample evidence to support the rate of return, presented by the Independent Staff, set by the PSC. We need not set out the specific evidence presented on both sides, but will note that we are in accord with that said by the PSC, in its order, explaining its comparison of the evidence presented by the Independent Staff and that presented by Mountain Bell:

"The Independent Staff presentation provides the substantial evidence of record meeting the governing law, court announcements and the Commission's decisions based thereon, because: it demonstrates that the compared utilities are comparable in key elements of risk and nature of operations, and it provides supported substantive data for determining a reasonable growth element of the DCF formula.

"Mountain Bell has not supported its basic criteria because most of the identified compared companies vary widely as to financial and operational risk from Mountain Bell, and Mountain Bell did not provide required reasonable risk adjustments; and the unidentified compared companies cannot be compared in any meaningful manner."

This is not to say that comparisons must be restricted to other utilities. A return on

equity in non-utility enterprises is definitely pertinent. Both types of enterprises compete for the same investors. However, in this instance, we agree that the whole record reflects the rate of return for comparable risk enterprises in which reasonable adjustments were indicated and supports the resulting rate allowed by the PSC.

■ We could listen to arguments ad infinitum on this issue, but we would still reach the same conclusion. When the rate set by the PSC is based on substantial evidence from the whole record, we will uphold it as reasonable, regardless of the method employed in achieving such result. "* * * Nor is it important to this case to determine the various permissible ways in which any rate base on which the return is computed might be arrived at. For we are of the view that the end result in this case cannot be condemned under the Act as unjust and unreasonable from the investor or company viewpoint." *Federal Power Commission v. Hope Natural Gas Co.*, supra, 320 U.S. at 603, 64 S.Ct. at 288.

## RATE ADJUSTMENTS SUPPORTED BY SUBSTANTIAL EVIDENCE

Mountain Bell refers to seven adjustments made in the test-year calculations which it contends were made arbitrarily and without substantial supporting evidence:

1. Expense adjustment for reduction in number of employees subsequent to end of test year without corresponding adjustment for loss of revenue and for offsetting capital investment.

2. Depreciation expense for test year was analyzed at year-end levels rather than at an average level.

3. One percent of gross revenues limitation was placed on license contract expense (services from affiliated entities—AT & T and Western Electric).

4. Twenty-One Thousand Dollars ($21,-000) in advertising expense was rejected as a promotional expense.

5. Right-to-use fees for software systems and development costs for electronic data processing were amortized over a three-year period rather than expensed.

6. A flow back over a two-year period was ordered for that received as a result of federal legislation relative to treatment of cost of removal of property which occurred in 1971 and a change in corporate income tax rate in 1979.

7. Working capital for a thirty-day time lag was disallowed on the basis of a combination lead/lag approach and balance-sheet approach.

The controversy over items 3, 4, and 5, (license contract expense, right-to-use fees, and advertising expense) is ultimately founded on that resulting from the divestiture of the Bell system. The number of appeals to the courts from the utility regulating authorities in the several states reflect the reassessment made necessary by the fact that no longer can the expenses of one of the Bell system's former operations be subsidized by the income from another. The PSC is certainly mindful of the fact that this reassessment must be accomplished without jeopardizing the ability of Mountain Bell to provide good telephone service and at the same time prevent necessary increased cost to the consumer from becoming unreasonable.

Sufficient time has not elapsed since the divestiture to positively gauge the benefits resulting to Mountain Bell from the license contracts with AT & T, the services to be received from the affiliated entities or the advertising expenses.[2] However, on the record before us we cannot find that Mountain Bell has met its burden to show the propriety of allowing additional amounts in these expense items. As already noted, the burden is on Mountain Bell to do so. The difficulty in attributing the exact portions of such expenses which are used or useful to Wyoming service is obvious. Yet, the

---

2. The amount here involved in advertising expenses is de minimus.

difficulty is one for Mountain Bell to overcome. It is an area in which we can properly give great deference to the expertise of the PSC. *Great Western Sugar Company v. Johnson,* supra.

■ With reference to the 1% limitation, Mountain Bell's witness testified:

"* * * There are a total to my knowledge of five jurisdictions out of 49 that have imposed a 1 percent cap. They are Arkansas, Kansas, West Virginia, Texas and this year Utah. * * *"

Likewise, Mountain Bell's witness testified as follows with reference to the software involved in the right-to-use fees:

"A. I know they have a life of over one year. I don't know what that life is. * * *"

Such evidence substantiates the PSC's decision to amortize the right-to-use fees and to limit the license contract expense to 1% of the gross revenues.

■ Items 2 and 7 (depreciation at year end and working capital adjustment) concern the method by which the PSC reached its result. As noted supra, we are concerned with the legal propriety of the end result reached by the PSC rather than with the method used. The evidence does not reflect an injury to Mountain Bell resulting from moving the expense and revenue items susceptible of amortization to year-end levels so as to match a year-end rate base. In fact, Mountain Bell's revenue requirement was actually increased by the adjustment. This methodology is just and reasonable and is within the prerogative of the PSC. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming,* supra; *New England Telephone and Telegraph Company v. Public Utilities Commission,* Me., 390 A.2d 8 (1978).

■ Evidence was presented by the Independent Staff in the form of a combination lead/lag and balance-sheet approach to determine necessary working capital. It reflected a time lag of 20.56 days rather than the traditional 30 days. It also reflected that the lag resulting from taxes collected from subscribers to be paid to taxing authorities made a negative figure on available working capital. Based on this evidence, the PSC reduced the amount of working capital to be applied to the rate base by about 85%. Mountain Bell's witness criticized the Independent Staff's evidence in that respect by contending that the combined time-lag and balance-sheet approach improperly results in consideration of certain revenues twice, that a composite factor was improperly applied to taxes with different lag days, and that it failed to include certain categories of expense. Mountain Bell did not submit a time-lag study or any other evidence reflecting the actual cash collection and actual cash payouts from which a working capital requirement could be computed. It did not apply specific figures to its criticism of the evidence presented by the Independent Staff. It was proper for the PSC to consider time lags working in favor of Mountain Bell in addition to those working against it. *Gas Service Company v. State Corporation Commission,* 4 Kan.App.2d 623, 609 P.2d 1157 (1980); *New England Telephone and Telegraph Company v. Public Utilities Commission,* supra. There was substantial evidence in the whole record to support the PSC findings in these respects.

■ Item 6 (flow back of taxes) presents the question as to which group of customers shall ultimately pay the taxes which have been deferred through changes in the tax laws. Mountain Bell contends that inasmuch as the taxes will eventually have to be paid, it should hold the previously deferred amount until time for payment. The PSC directed a "flow back" of the taxes to the ratepayers over a two-year period. Mountain Bell does not cite authority or refer to any evidence which would indicate injustice in returning the tax money to the consumers whose service most concurrently generated the tax benefits.

The evidence to support the adjustment made in Item 1 (expense adjustment for reduction of employees) is not as positive as is the evidence in support of the other adjustments made by the PSC. The adjustment was made to reflect a disallowance of

an expense in the test year for a work force reduction of 386 employees on April 30, 1983, seven months after the end of the test year. Mountain Bell contends that the work force reduction was necessitated by a decrease in customer demand and a centralization program for certain operations. It argues that this treatment of one category of expenses without corresponding attention to its cause, i.e. decreased revenue, etc., violates the fundamental concept of the test year, i.e. matching appropriate levels of expenditures, revenues and investments. The PSC, in turn, points out that it is obligated to adjust the test-year data for known and measurable changes where the changes are shown to be reliable and certain. *Utah Power and Light Company v. Idaho Public Utilities Commission*, 102 Idaho 282, 629 P.2d 678 (1981). In support of its contention, the PSC presented the following quotation from *Gas Service Company v. State Corporation Commission*, supra, 609 P.2d 1157, 1166–1167:

> " 'Ratemaking, by its very nature, is prospective and in order to neutralize the negative effects of speculation and guesswork about future economic conditions, it is accepted practice to base future rates upon known past and present conditions through the use of data gathered during a specified test period. [Cite omitted.] This process of prognostication creates a conflict between the need to lend some finality to ratemaking by utilizing a well-defined, finite test period and the need to base calculations upon the latest available relevant data which often pertains to time periods other than the test period. [Cite omitted.] A satisfactory resolution of this conflict is that when *known and measurable* post-test-year changes affect with certainty the test-year data, *the commission may, within, its sound discretion,* give effect to those changes.  * * * ' " (Emphasis in original.)

We agree known and measurable post-test-year changes which affect the test-year data "with certainty" are proper considerations. The inquiry here is whether the complete change was considered or whether only one aspect of the change was considered. Stated another way: Did the changes which were considered affect the test-year data *with certainty* or were other considerations (revenue, etc.) necessary to make certain the effect of the change?

The Independent Staff proposed an adjustment for employee reduction in the amount of $3,908,477, representing an average decline in number of employees of 20.5%. The PSC accepted evidence that many of the transferred employees were handling Wyoming work from other locations resulting in a work decrease of only 11%, and used the 11% figure rather than the 20.5% figure in making the adjustment. This action will support our conclusion that the PSC did not abuse its discretion in this instance, and we find there is evidence sufficiently substantial to support the adjustment.

In doing so, we again point to the fact that utilization of test-year data, be it historical or pro-forma, or both, is a mechanism to assist in determining the anticipated profit of a utility which together with the rate base will enable the PSC to set a just and reasonable rate of return. In *Mountain Fuel Supply Company v. Public Service Commission of Wyoming*, supra, 662 P.2d at 885, we said:

> "The PSC is required by statute to arrive at rates which are 'just and reasonable.' Section 37-3-101, W.S.1977 (Cum.Supp. 1982). * * * The burden is upon Mountain Fuel to prove that the rates arrived at are unjust or unreasonable. * * *
> " * * * *In Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 602, 64 S.Ct. 281, 287–288, 88 L.Ed. 333 (1944), the Court held:
> > " ' * * * Under the statutory standard of "just and reasonable" it is the result reached not the method employed which is controlling. [Citations.] It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an

end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. * * * '

"Our court recently has stated:

" ' * * * We will not set a formula to be applied by the PSC in establishing a rate structure or in setting rates.'

*Great Western Sugar Company v. Johnson,* supra, 624 P.2d at 1188."

Inasmuch as Mountain Bell has not carried its burden to demonstrate the established rates to be confiscatory, and inasmuch as the PSC adjustments to the rate base and expenses were supported by substantial evidence, the allowed rate was not a result of arbitrary and capricious action on the part of the PSC. We do not find an abuse of discretion.

Affirmed.