**US WEST COMMUNICATIONS, INC., Appellant (Petitioner),**

v.

**The WYOMING PUBLIC SERVICE COMMISSION; Bil Tucker, John R. Smyth, and Stephen N. Ellenbecker, in their official capacities as Commissioners of the Wyoming Public Service Commission; and Union Telephone Company, Inc., Appellees (Respondents).**

**No. 95–7.**

Supreme Court of Wyoming.

Nov. 16, 1995.

Paul J. Hickey and Richard D. Bush of Hickey, Mackay, Evans, Walker & Stewart, Cheyenne; and William P. Heaston (argued) of US West Communications, Inc., Denver, CO, for Appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Kristin H. Lee, Assistant Attorney General, for Appellee Public Service Commission.

Bruce S. Asay (argued) of Murane & Bostwick, Cheyenne, WY, for Appellee Union Telephone Company, Inc.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

US West Communications, Inc. (US West) appeals from an order of the Public Service Commission (PSC) ordering it to pay for terminating access services provided by Union Telephone Company, Inc.'s (Union) cellular telecommunications service. US West claims Union has failed to file the appropriate tariffs and rates as required by law.

We reverse and remand.

US West presents a single issue for review:

Whether the Public Service Commission erred in ordering US West to pay terminating access for cellular calls terminating within Union Cellular's Rural Service Area in the absence of any cellular terminating access tariffs on file with the PSC?

The PSC responds with two issues:

I. Is appellant US West out of time to challenge the PSC's ruling that it must pay Union Cellular terminating access charges based on Union Telephone's terminating access charges?

II. Did the Wyoming Public Service Commission err when it ordered US West to pay terminating access charges to Union Cellular?

Union did not file a statement of the issues.

## BACKGROUND AND FACTS

The background to this dispute can be found in this court's opinion in *Union Tel. Co., Inc. v. Pub. Serv. Comm'n*, 833 P.2d 473, 482 (Wyo.1992). In that decision, this court held that Union was entitled to mutual compensation for terminating cellular calls (terminating access payments) made within its Rural Service Area (RSA) [1] by US West subscribers. We remanded the case to the PSC for further proceedings.

After the parties failed to reach an agreement on mutual compensation, the PSC held a hearing to determine the issue. On August 6, 1993, the PSC issued its Findings, Conclusions and Order on Remanded Issue. The PSC concluded that terminating access payments for cellular calls should be equal to that charged for terminating access in Union's landline service area:

There is no evidentiary basis of record to support setting a different charge for providing terminating access to Union Cellular customers within Union Telephone's landline service area and the remaining RSA.

On September 7, 1993, US West filed a Petition for Rehearing asserting, in part, that Union had not filed the appropriate cellular tariffs. The PSC, by Order dated December 9, 1993, denied the Petition for Rehearing on the basis that US West agreed, by stipula-

---

1. The RSA is an exclusive cellular telecommunications area operated by Union under license from the FCC. The RSA encompasses its much smaller landline local telephone exchange. *Union Tel.*, 833 P.2d at 474.

tion, to the terminating access charges for service provided within Union's landline area.

US West sought judicial review of the August 6 and the December 9 orders, while also filing a Petition for Rehearing on the December 9 order with the PSC. The district court certified the case to this court on March 2, 1994. On June 14, 1994, this court granted the parties' request to voluntarily dismiss the court case in favor of further proceedings in front of the PSC.

A hearing was held by the PSC on August 11, 1994, on US West's Petition for Rehearing on the December 9, 1993 order. Again, US West argued that Union did not have the proper tariffs filed for terminating access payments for cellular calls within the RSA. The PSC denied the Petition, concluding that Union was "duly authorized to charge its cellular service rates by the Commission's bench order of July 11, 1990." The PSC then ordered US West to "commence payment of Union's filed cellular tariff rates for cellular terminating access service throughout Union's certificated cellular service area." US West then filed a Petition for Review in the district court, which certified the case to this court.

### STANDARD OF REVIEW

■ When a case is certified pursuant to W.R.A.P. 12.09(b), we apply the appellate standards applicable to the court of the first instance. *Union Tel. Co., Inc. v. Pub. Serv. Comm'n,* 907 P.2d 340, 341–42 (Wyo.1995) (*citing Hepp v. State ex rel. Worker's Compensation Div.,* 881 P.2d 1076, 1077 (Wyo. 1994)).

The scope of our review of agency decisions is set out by W.S. 16–3–114(c) (1990 Rpl.):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*See Wyoming Consumer Group v. Pub. Serv. Comm'n,* 882 P.2d 858, 860 (Wyo.1994) (*citing Mountain Fuel Supply Co. v. Pub. Serv. Comm'n,* 662 P.2d 878, 881–82 (Wyo.1983)).

■ This court cannot usurp the legislative function delegated to the PSC, *Mountain Fuel,* 662 P.2d at 883; however, during our review of the PSC's exercise of its statutory powers, we will keep in mind that, as a regulatory agency, the PSC

has no inherent or common-law powers. Stated in another manner, an administrative body has only the power and authority granted by the constitution or statutes creating the same. Such statutes must be strictly construed or "any reasonable doubt of existence of any power must be resolved against the exercise thereof. A doubtful power does not exist."

*Montana Dakota Util. Co. v. Pub. Serv. Comm'n,* 847 P.2d 978, 983 (Wyo.1993) (*quoting Tri–County Elec. Ass'n v. City of Gillette,* 525 P.2d 3, 8–9 (Wyo.1974)). The PSC, in the exercise of its regulatory powers over public utilities, is required to give paramount consideration to the public interest. *Montana Dakota,* at *id.*

## DISCUSSION

■ Prior to discussing the issue raised by US West, we must first address several arguments raised by Union and the PSC relating to the propriety of this appeal. The PSC claims that US West never appealed the August 6, 1993 order in which the landline terminating access charges were adopted as the terminating access charges for the cellular operation. The PSC argues that US West's failure to do so prohibits raising the issue on appeal now, since it is the September 19, 1994 order from which appeal was taken. Similarly, Union asserts that US West never raised this issue before the PSC and cannot do so for the first time on appeal. Union also claims that US West is barred by res judicata [2] from raising the issue because it was decided by the PSC and not appealed at that time. Additionally, Union argues that US West is barred by the doctrine of invited error.

First, the record clearly demonstrates that US West did, in fact, raise this issue before the PSC. In its September 19, 1994 Final Order on Oral Argument and Briefs and Denying Additional Rehearing Request, the PSC determined the following issues:

1. Whether the Commission has authorized Union's rates for terminating calls to cellular customers in Union Cellular's Rural Service Area insofar as it extends outside of Union's wireline service area;

\* \* \* \* \* \*

3. Whether (as US West asserts) Union must file and support, and the Commission approve, the specific rate for the cellular terminating service provided by it outside its certificated local exchange or "wireline service" area pursuant to Wyoming statutory and Commission rule requirements, prior to, and as the basis for, any such terminating access charges to be paid by U.S. West to Union.

Thus, whether Union must file tariffs for the terminating access charges for cellular calls

was raised before the PSC and not for the first time in this court.

■ Secondly, the PSC is mistaken in its contention that US West had to appeal the August 6, 1993 order to preserve this issue for this appeal. While that order may have determined that the proposed rate for access termination was appropriate, it did not determine whether the rate had been properly filed. The filing procedure for tariffs is distinct from the determination of the pertinent rate for a particular tariff. See W.S. 37-3-.101 (1995 Cum.Supp.) (rates shall be just and reasonable) and W.S. 37-3-110 (1977 Rpl.) (schedules of rates must be filed with the PSC and available for public inspection).

■ Finally, neither the doctrines of collateral estoppel nor invited error act to bar this issue from consideration. For a party to be collaterally estopped from raising an issue in a subsequent proceeding, four factors are considered: (1) whether the issue decided by the prior proceeding is identical to the present issue; (2) whether the prior proceeding resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is being asserted was a party or in privity with a party to the prior proceeding; and (4) whether the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Slavens v. Bd. of County Comm'rs*, 854 P.2d 683, 686 (Wyo. 1993).

Union relies on a July 12, 1990 Finalization of Interim Order issued by the PSC wherein the Commission found that "[b]y amendments submitted July 11, 1990, Union completed the filing of its rates and tariffs" and the December 18, 1990 order which reiterated that Union had filed its rates and tariffs. After a review of the record and the applicable statutory and regulatory authorities, we conclude that the issue was not fully resolved on the merits and that US West did not have a full opportunity to litigate the issue. The rationale for our decision is that an order

---

2. Actually, res judicata is not the appropriate doctrine to invoke in this instance; collateral estoppel is. Res judicata is the doctrine of claim preclusion rather than issue preclusion which is the product of collateral estoppel. *Slavens v. Bd.*

*of County Comm'rs*, 854 P.2d 683, 686 (Wyo. 1993). Union's claim is that the *issue* of the filing of the tariffs was resolved in earlier proceedings.

setting rates or tariffs is not the final act. After the PSC approves a rate or tariff, that rate must then be filed with the agency. PSC Procedural Rules and Special Regulations § 217; W.S. 37–3–110. Until such occurs, the filing process is not yet complete. Therefore, the findings in the PSC order cannot be collaterally estopped since there are events occurring after the order which are necessarily determinative of the issue. Likewise, there is no invited error.

All rate charges by a public utility must be filed with the PSC. Wyoming Statute 37–3–110 provides, in pertinent part:

Within a time to be fixed by the commission, every public utility shall file with the commission, and keep open to public inspection as this commission may direct, schedules showing all rates for every service rendered or to be rendered by it.

*See also* PSC Procedural Rules and Special Regulations §§ 210–212, 217. This statute unambiguously makes it mandatory for a public utility to file a schedule showing rates for every service offered. As the PSC noted, Union's cellular operations are distinct and separate from its landline operations. Under the law, Union is required to file rates for its cellular operations. There is no evidence in the record that Union has ever filed the appropriate rates. This is contrary to law and, accordingly, the PSC's decision must be reversed.

Union and the PSC attempt to justify the failure to file rates for the cellular services by pointing to those parts of the record where testimony and evidence established that the terminating access costs for the cellular service are identical with the terminating access costs for the landline service. While this may be so, it is irrelevant to the filing issue. The question on appeal is whether the rates were properly filed. As we noted, a rate for each and every service must be filed. The cellular operations are distinct from the landline, both in terms of technology and geographic scope. By law, rates for those services in the cellular RSA must be filed once the PSC has established the appropriate rate. W.S. 37–3–110.

We note that the PSC's paramount consideration must be public interest. Part of the stated purpose of W.S. 37–3–110 is to allow the public to inspect a public utility's filed service rates. By simply adopting the landline terminating access charges without a filing under the cellular service, the public would be unable to determine the charges. This is anathema to the language and spirit of the law of this state. The rates, whether adopted from another service or not, must be filed under the pertinent service once they have been set.

Finally, a public utility is precluded from receiving compensation different from that prescribed "in the schedules of such public utility then filed and published in a manner provided in [the Wyoming Public Utility Act]." W.S. 37–3–102 (1977 Rpl.). Union failed to comply with the act. No tariff was filed establishing *any* rate terminating access charges for cellular calls as required by the PSC Procedural Rules and Special Regulations § 217. Union is, therefore, precluded from receiving terminating access charges for cellular calls until such tariffs are properly filed.

## CONCLUSION

The PSC erred by failing to require Union to file its rates and tariffs on its cellular terminating access costs. Reversed and remanded for further proceedings consistent with this opinion.