TRI–STATE GENERATION AND TRANSMISSION ASSOCIATION, INC; the United States of America; Carbon Power & Light, Inc.; Wheatland Rural Electric Association, Inc.; Rural Electric Company; Wyrulec Company; Riverton Valley Electric Association, Inc.; Hot Springs County Rural Electric Association, Inc.; Niobrara Electric Association, Inc.; Big Horn Rural Electric Company; and Wyoming Rural Electric Association, Petitioners,

v.

The **WYOMING PUBLIC SERVICE COMMISSION; John R. Smyth, Bil Tucker, and Nels J. Smith, in their offi-**cial capacities as Commissioners of the Wyoming Public Service Commission; PacifiCorp, d/b/a Pacific Power and Light Company; Shoshone River Power, Inc.; and Garland Light & Power Company, Respondents.

No. 89–26.

Supreme Court of Wyoming.

Dec. 29, 1989.

628

Michael A. Williams, Robert E. Youle, and Edward A. Gleason of Sherman & Howard, Denver, Colo., and Bruce Asay of Kline, Buck & Asay, Cheyenne, for petitioner Tri–State Generation and Transmission.

John R. Bolton, Asst. Atty. Gen., Cheyenne, Richard Allen Stacy, U.S. Atty., Cheyenne, J. Christopher Kohn and Larry R. Steffes, Washington, D.C., for petitioner U.S.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Roger C. Fransen, Sr. Asst. Attys. Gen., Cheyenne, for respondent Public Service Com'n of Wyoming.

Stanley K. Hathaway of Hathaway, Speight & Kunz, Cheyenne, and Stephen S. Walters and George M. Galloway of Stoel, Rives, Boley, Jones & Grey, Portland, Or., for respondent PacifiCorp.

Robert D. Olson of Goppert, Olson & Guill, Cody, for respondent Shoshone River Power, Inc.

Ross D. Copenhaver and Tracy J. Copenhaver of Copenhaver, Kath & Kitchen, Powell, for respondent Garland Light and Power Co.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

In this case, petitioners, Tri–State Generation and Transmission Association, Inc. (Tri–State) and its member utilities, along with the Rural Electrification Administration (REA), seek reversal of an order of the Wyoming Public Service Commission (PSC) which approved the sale of the assets of Shoshone River Power, Inc. (Shoshone) and Garland Light & Power Company (Garland) to Pacific Power and Light Company (PP & L), claiming the sales would adversely affect the rates charged consumers. Petitioners claim that the PSC prejudged this controversy and denied them due process; that the PSC's order contradicts federal law and jeopardizes the REA's nationwide

program; that the PSC's narrow focus on quantifiable damages failed to vindicate the public interest as is required by Wyoming law; and that the PSC's order is unconstitutionally retroactive in its effect.

We affirm the order of the PSC.

The hearing conducted by PSC was the hearing required by our decision in the case *Tri–State Generation and Transmission Ass'n, Inc. v. Wyoming Public Service Comm'n*, 735 P.2d 718 (Wyo.1987). That decision was rendered in a case in which only the sale of Shoshone was at issue, but it is evident that the decision applied equally to the sale of Garland. We note, at the outset, that at the time this litigation was unfolding before the PSC and in this court, the parties in this case, with the exception of the PSC, were also litigating issues relating to breach of contract in the federal courts. Many of the issues litigated in federal court have now been resolved. *Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir.1986); *Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346 (10th Cir.1989).

The facts essential to disposition of this case follow. Additional facts may be gleaned from the opinions cited above. Upon remand by us to the PSC, a contested case hearing was held to ascertain the propriety of the rate changes that resulted from the sale of Shoshone and Garland to PP & L. Shoshone and Garland are electric distribution cooperatives whose assets are owned by the consumers they serve. They sell electric power at retail to consumers in Wyoming. Both are regulated by the PSC. Tri–State is made up of twenty-five distribution cooperatives, including Shoshone and Garland, and generates and purchases electric power which is then sold at wholesale to its member cooperatives. Much of Tri–State's debt is financed or guaranteed by the REA. That debt is secured largely by assignments to REA of Tri–State's agreements with its members for the sale and purchase of wholesale electric power. Such agreements were in force between Tri–State and Shoshone and Garland and had been assigned as security to REA.

The impetus for this litigation arises from Shoshone's and Garland's obligations to buy power from Tri–State and, in turn, REA's interest in preserving the solvency of Tri–State because of their creditor/debtor relationship. The contracts between Shoshone and Garland and Tri–State require that Shoshone and Garland, so long as they are in existence, purchase all their requirements for electric power from Tri–State. The crucial question is whether Shoshone and Garland *cease to exist,* and hence become relieved of their obligation to buy power from Tri–State, when they sell their assets and dissolve their corporate existence. The Tenth Circuit Court of Appeals has answered this question:

"We hold, therefore, that Shoshone has an implied obligation to remain in business and not to eliminate its requirements, as long as there are members in the Shoshone system requiring electric power. In other words, the fulfillment of Shoshone's contractual undertakings necessarily implies the continuance of Shoshone's system. Otherwise, the contract could not be carried out in the way anticipated and would be rendered unreasonable to Tri–State and REA. Consequently, Shoshone breaches the all-requirements contract as a matter of law when it attempts to eliminate its requirements by selling its members subscriptions to Pacific and ceasing business." *Tri–State Generation,* 874 F.2d at 1360.

The petitioners posit four issues before this court:

"I. The PSC prejudged the result of the rehearing, thereby denying petitioners' due process rights.

"II. The PSC's Order contradicts federal law and jeopardizes a nationwide federal program of rural electrification, and it is thereby precluded.

"III. The PSC's narrow focus on quantifiable damages within the State of Wyoming and its refusal to consider evidence presented by petitioners ignored the public interest.

"IV. The PSC violated the Wyoming Constitution, and directives of this Court [Wyoming Supreme Court] when it attempted to give retroactive effect to its previous order approving the sale of Shoshone River Power, Inc. ('Shoshone')."

In response, the PSC contends:

"I. The Public Service Commission of Wyoming's decision in this proceeding was fair and free from bias.

"II. The decision of the Public Service Commission of Wyoming approving the sales of Garland and Shoshone to Pacific is supported by substantial evidence and is the product of proper consideration of the evidence presented.

"III. The Public Service Commission of Wyoming's action in this proceeding is not preempted by federal law.

"IV. The Public Service Commission of Wyoming's order allowing its approval of the Shoshone sale to be effective on the date of its initial approval of that sale was not an impermissible retroactive order."

PP & L, Shoshone and Garland also presented briefs to this court, and they take essentially the same positions espoused by Tri–State and REA, although the issue of retroactivity does not apply to Garland.

■ As a preface to our disposition of the issues raised, we must first delineate the roles played by the federal courts and the PSC. At first blush, there may appear to be an inconsistency between the determination reached by the federal court and that reached in the PSC administrative proceeding. On closer examination, however, it is apparent that adjudication of the breach of contract issues litigated in the federal courts is very different from the more limited mission of the PSC to vindicate the public's interest in just and reasonable utility rates. The PSC is not empowered to decide whether a breach of contract occurred in this case. The PSC has power only to regulate and supervise every public utility in the state as provided for by law and duly adopted rules and regulations. W.S. 37–2–112. The PSC is commanded to ensure that:

"All rates shall be just and reasonable, and all unjust and unreasonable rates are prohibited. Except as otherwise provided in W.S. 15–7–407, no public utility shall in any manner charge, demand, collect or receive from any person greater or less or different compensation for any service rendered or to be rendered by the public utility than is charged, demanded, collected or received by the public utility from any other person for a like and contemporaneous service under similar circumstances and conditions." W.S. 37–3–101.

In determining what rates are just and reasonable, the PSC may take into consideration depreciation of plant, obsolescence of equipment, expense of operation, physical and other values of the plant, system, business and properties of the public utility whose rates are under consideration. W.S. 37–2–122. The PSC does not have jurisdiction to determine the rights of parties to a contract. *Tri–County Electric Ass'n, Inc. v. City of Gillette*, 525 P.2d 3, 9 (Wyo. 1974). In summary, the PSC's role is to ensure that the sales did not result in unjust or unreasonable utility rates for affected consumers. That determination is not altered by the assertion that the effectuation of those sales was in breach of contracts between Tri–State and Shoshone and Garland.

■ We think it evident that the issues asserted by the petitioners in this case are based largely upon a supposition that the PSC had power to adjudicate the rights of the various parties to this action under a complex series of contracts and statutes which govern rural electrification. First, petitioners claim that the PSC was biased in its adjudication of this matter and that they were denied due process of law. This is based in large part upon the fact that the PSC refused to grant a contested case hearing until after remand by this court. We hold that such a circumstance does not support a finding of bias. PSC initially believed, in good faith, that a hearing was not required. We are directed to nothing in the record that now convinces us that the hearing after remand was not conduct-

ed fairly, impartially, and satisfied all requirements of due process.

▪ Petitioners assert that the refusal of the chairman to receive evidence which pertained to breach of contract, as well as other obligations amongst the parties to this litigation, demonstrates PSC's bias. We hold that this contention does not support an allegation of bias. As we shall develop more fully in response to petitioners' second and third arguments, PSC's rulings on the admission of evidence pertaining to the breach of contracts were proper.

▪ Petitioners also make passing reference to the absence of one of the PSC commissioners from a significant portion of the remand hearing as supporting their allegation of bias. The record only demonstrates that the absence was due to a death in the family. There is nothing to suggest that the commissioner was anything less than a full-fledged participant in the decision making process. Members of administrative agencies are assumed to be men of conscience and intellectual discipline who are capable of judging the case before them fairly and on the basis of the evidence presented. *Fallon v. Wyoming State Board of Medical Examiners*, 441 P.2d 322, 329 (Wyo.1968); *Armed Forces Cooperative Insuring Ass'n v. Department of Insurance*, 622 P.2d 1318, 1326–27 (Wyo. 1980). One who asserts impermissible bias has the burden to overcome the contrary presumption and must affirmatively establish the existence of bias. *Id.*, at 1327; *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, 549 P.2d 1161, 1167 (Wyo.1976). We hold that petitioners have failed to carry this burden of demonstrating bias.

▪ Petitioners begin their second argument with another faulty premise which undermines their entire argument. Petitioners assert: "By allowing Shoshone and Garland to sell their assets and avoid their obligations under the wholesale power contracts, the PSC's order will impermissibly undermine a federal program [rural electrification]. Therefore, the order is precluded by federal law and cannot stand." The

PSC order did not allow Shoshone and Garland to sell their assets. Rather, it found that the public interest was served by the changes in rates that would result, or which had already resulted, because of the sales or proposed sales. The PSC order does not allow Shoshone and Garland to avoid their obligations to Tri–State and/or the REA. On the contrary, the PSC order quite appropriately makes clear that it does not have authority to adjudicate those issues which have now already largely been settled by the litigation in federal court. We need not address this argument further because the order does not have the effect contended by the petitioners and it could not offend federal law for reasons that do not exist.

▪ In their third contention, petitioners assert that the PSC's narrow focus on dollars obscured public interest considerations of fundamental fairness. Our review of the record reveals that the PSC considered all offered evidence which was relevant to its statutory authority to review utility rates. It refused to consider evidence which was not pertinent to that mission. Thus, it refused to consider evidence relating to the alleged breaches of contract. The PSC's refusal to consider this evidence was correct, for, as we noted earlier in our discussion, it does not have authority to determine the rights of parties to a contract. *Tri–County Electric Ass'n, Inc.*, 525 P.2d at 9. Petitioners' real burden in this regard, which they have ignored to their detriment, is this:

"The scope of our review of an appeal from an administrative action is directed by § 16–3–114 W.S.1977. Under that statute, we are bound to review the entire record to see if the agency's action is supported by substantial evidence. If so, we must uphold the agency's actions and not substitute our judgment for that of the agency's. Substantial evidence has been defined 'as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Substantial evidence may indeed be less than the great weight of evidence, but is more than a mere scintilla of evidence. The

possibility of drawing two inconsistent conclusions from the evidence presented does not preclude the agency's conclusion from being supported by substantial evidence. The burden is on appellant to prove arbitrary, illegal or fraudulent action by the agency." (footnote and citations omitted) *Burlington Northern Railroad Co. v. Public Service Comm'n,* 698 P.2d 1135, 1138–39 (Wyo.1985).

Petitioners have failed to carry that burden with their argument that the PSC improperly refused to consider what the long-range, across-the-board effects on Tri-State and the REA would be if Shoshone and Garland were permitted to breach their contracts and if no remedy were available to remedy those breaches. Moreover, the issue of what damages are due Tri–State is now res judicata. *Tri–State Generation,* 874 F.2d 1346.

■ Finally, petitioners contend that the PSC's order is impermissible because it has an unconstitutional, retroactive effect.

This contention is based upon Art. 1, § 35 of the Wyoming Constitution which mandates that "[n]o ex post facto law, nor any law impairing the obligation of contracts, shall ever be made." Once again, all of petitioners' premises are faulty. The PSC made no law which was ex post facto or which impaired the obligation of contracts. All the PSC did was to review the rate-making impact of the Shoshone sale. The time of taking effect of the sale was wholly a matter of contract between the parties. The PSC could not, and did not, make any decisions regarding the terms or conditions of that contract.

The order of the PSC is affirmed in all respects.